UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,                    Case No. 16-cr-143-pp

                    Plaintiff,

v.

BRAXTON D. TAYLOR,

                    Defendant.

---

**DECISION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORTS AND RECOMMENDATIONS (DKT. NOS. 25, 26) AND DENYING DEFENDANT'S MOTIONS TO SUPPRESS (DKT. NO. 15) AND TO DISMISS SUPERSEDING INDICTMENT (DKT. NO. 16).**

---

On February 22, 2017, the grand jury returned a superseding indictment charging Braxton Taylor with two counts of knowingly possessing a firearm while subject to a domestic violence injunction in violation of 18 U.S.C. §§922(g)(8) and 924(a)(2). Shortly after, the defendant filed two pretrial motions: (1) a motion to suppress evidence, dkt. no. 15, and (2) a motion to dismiss the superseding indictment, dkt. no. 16. Magistrate Judge David E. Jones issued reports and recommendations, recommending that this court deny both motions. Dkt. Nos. 25, 26. The defendant objected to Judge Jones' recommendation that the court deny the motion to dismiss the superseding indictment. The court adopts both recommendations, overrules the objection, and denies the motions.

1

## I.  Motion to Suppress Evidence

The defendant has asked the court to exclude from evidence a gun found during a traffic stop of a car in which he was a passenger. Judge Jones recommended that the court deny that motion. The defendant has not objected to that recommendation.

### A.  Factual Background

The parties do not dispute the facts relating to the motion to suppress. On June 24, 2016, Milwaukee police officers Erin Tischer and Michael Miller conducted a traffic stop on an SUV for a cracked windshield. Dkt. No. 15 at 1. The officers discovered that both the driver, Austin Sanders, and the passenger (the defendant) had active arrest warrants. Id. While officers took the subjects into custody, the SUV remained illegally parked at a bus stop. Dkt. No. 17 at 2. Instead of towing the SUV, Officer Tischer asked for and received consent to move the vehicle onto a side street. Id. As she got into the SUV, she observed a handgun in the SUV's driver door pocket. Dkt. No. 15 at 1. Officers then searched the SUV and recovered another firearm under the passenger seat. Id. The grand jury charged the defendant with possession of the firearm the officers found under the passenger seat; his motion to suppress challenges the legality of its discovery.

### B.  The Parties' Arguments

In the motion to suppress, the defendant argued that the fact that the officers found a gun in the driver door pocket of the SUV did not give the officers a reason to believe that the SUV contained any other evidence of

criminal conduct. Dkt. No. 15 at 2-3. He argued that the totality of the circumstances which led to the defendant's arrest were benign. Officers had pulled Sanders over for a cracked windshield; Sanders and the defendant had been cooperative during the stop; neither had access to the vehicle when the officers searched it (both were handcuffed and locked in the back of a squad car); the defendant had no criminal record at the time and Sanders had only one misdemeanor conviction; and the officers based Sanders' arrest on the concealed nature of the gun, not its illegal possession. Id. The defendant argued that the officers had not articulated why they searched the SUV, or what they thought they'd find by doing so. Id. at 3.

The government's response was quite brief. The government stated that because the defendant was a passenger in the vehicle, he lacked standing to challenge any search. Dkt. No. 17 at 2 (citing United States v. Walton, 763 F.3d 655, 666 (7th Cir. 2014); Rakas v. Illinois, 439 U.S. 128, 148 (1978)).

In his reply, the defendant conceded that he possessed the firearm the officers found under the passenger seat.[1] Dkt. No. 22 at 3. He also told the court that he was not *just* a passenger in the SUV—he was a close personal friend of the driver. Id. The defendant contended that his ownership of the gun, combined with his close personal relationship with the driver, gave him the reasonable expectation of privacy necessary to assert his Fourth Amendment rights. Id.

---

[1] After the search, officers found the defendant's fingerprint on the gun. Dkt. No. 25 at 1.

3

C.    Judge Jones' Decision

Magistrate Judge Jones disagreed. Judge Jones began by discussing the Supreme Court decision on which the government relied for its standing position, Rakas v. Illinois. Dkt. No. 25 at 2. Judge Jones found that the Rakas Court had rejected the "target" theory of Fourth Amendment standing that the defendant advanced. Dkt. No. 25 at 2. He noted that Rakas expressly stated that someone whose property was seized had no "'legitimate expectation of privacy' protected by the Fourth Amendment 'in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy.'" Id. at 2-3 (quoting Rakas, 439 U.S. at 148-49).

Judge Jones focused on the fact that, while the defendant had asserted a possessory interest in the *gun*, he had not asserted a possessory interest in the *vehicle*. Dkt. No. 25 at 3. Judge Jones reasoned:

> [S]howing an interest in the property seized is not enough. The Supreme Court has held that ownership of seized property is insufficient to give the owner an expectation of privacy requisite to challenge its seizure. The owner must also have a reasonable expectation of privacy in the place in which the personal property is located. *See Rawlings v. Kentucky,* 448 U.S. 98, 105-06 (1980); *see also United States v. Lisk,* 522 F.2d 228, 230-31 (7th Cir. 1975) (in denying motion to suppress a defendant's bomb that was seized from the trunk of another party's [Mr. Hunt] car, stating that "[t]he invasion of Hunt's privacy was a violation of Hunt's Fourth Amendment rights, but this violation is clearly not available to the defendant as a basis for suppressing evidence acquired thereby").

4

Dkt. No. 25 at 3.

Because the defendant was a passenger in Sanders' vehicle, Judge Jones concluded that the defendant did not have a legitimate expectation of privacy in the place searched. Id. at 4. He recommended that this court deny the motion to suppress. Id.

    D.    <u>Analysis</u>

In <u>Rakas v. Illinois,</u> the Supreme Court considered whether the petitioners—who had been passengers in the vehicle at the time officers stopped it—had standing under the Fourth Amendment to move to suppress evidence seized from the car. <u>Rakas</u>, 439 U.S. at 133-34. The petitioners conceded that they were "simply passengers; the owner of the car had been the driver of the vehicle at the time of the search[,]" and did not assert an ownership interest in the evidence they sought to suppress (a rifle and shells). <u>Id.</u> at 130. They advocated broadening the Fourth Amendment standing rule, "so that any criminal defendant at whom a search was 'directed' would have standing to contest the legality of that search and object to the admission at trial of evidence obtained as a result of the search." <u>Id.</u> (citing <u>Jones v. United States</u>, 362 U.S. 257 (1960)).

The Court rejected this "target" theory, and re-affirmed that "'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'" <u>Id.</u> at 133-34 (quoting <u>Brown v. United States</u>, 411 U.S. 223, 230 (1973)). The Court reasoned:

> [a] person who is aggrieved by an illegal search and seizure
> only through the introduction of damaging evidence secured

5

> by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. <u>Alderman, supra,</u> 394 U.S. at 174, 89 S.Ct. at 966. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, <u>United States v. Calandra</u>, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974), it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.

<u>Rakas,</u> 439 U.S. at 425 (citing <u>Alderman v. United States</u>, 394 U.S. 165, 174 (1969)).

As to the status of the petitioners as passengers, the <u>Rakas</u> Court found that they could not assert a legitimate expectation of privacy in the vehicle. <u>Id.</u> at 148. Specifically, the Court held that

> [p]etitioners' claim is one which would fail even in an analogous situation in a dwelling place, since they made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy.

<u>Id.</u>

Supreme Court precedent supports Judge Jones' finding that claiming an interest in the property seized is not enough to bring a Fourth Amendment challenge. Judge Jones is correct—the owner of the seized property also must have a reasonable expectation of privacy in the *place* in which the officers find the property. <u>See</u> <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 105-06 (1980). The defendant here had no such expectation. He has not pointed to any facts that would provide him a reasonable expectation of privacy in the SUV. <u>See</u> <u>United States v. Coleman</u>, No. 4:16-cr-40049, 2017 WL 1398641, at *2-3 (C.D. Ill. Apr.

18, 2017) (finding that a friend of the vehicle's owner had obtained a reasonable expectation of privacy in the vehicle because he had borrowed the car on a long-term basis); United States v. Sanford, 806 F.3d 954, 958 (7th Cir. 2015) (speculating as to whether one who borrowed a car in the short term might, under certain circumstances, acquire a reasonable expectation of privacy).

Despite this fact, the defendant has attempted to distinguish Rakas from the facts of his case in two ways. First, he argues that he had a possessory interest in the firearm the officers found under the passenger seat. That is exactly the argument which Rakas rejected. Rakas, 439 U.S. 133. Second, he asserts that he had a closer relational connection with the driver than did the passengers in Rakas. The defendant cites no case law in support of his claim that because he was a personal friend of Sanders', he somehow acquired a reasonable expectation of privacy in Sanders' car. This is not surprising—such a ruling would gut Rakas in all cases except those in which the passenger was a stranger to the driver.

The court agrees with Judge Jones that the defendant was a passenger in Sanders' car, and thus did not have standing under the Fourth Amendment to challenge the search of Sanders' car. See Walton, 763 F.3d at 666 ("A mere passenger lacks standing because he cannot prevent the driver or owner of the car from, for example, picking up random strangers and showing them the interior of the car. A driver or owner could invite the police to enter a vehicle, or

7

drive it to the station herself. A mere passenger has no right to ward off onlookers or protect his privacy in a car that he has no power over.").

The court adopts Judge Jones' report and recommendation, incorporates his conclusions and the reasoning supporting those conclusions into this order, and denies the defendant's motion to suppress.

## II. Motion to Dismiss Superseding Indictment

The superseding indictment charged the defendant with possessing a firearm as a prohibited person—specifically, as someone who was subject to a domestic violence injunction. Dkt. No. 10. The defendant asked the court to dismiss the superseding indictment, arguing that barring someone from possessing a firearm solely because he is subject to a domestic violence injunction (without having been proven to have committed an act of domestic abuse) violates the Second Amendment. Dkt. No. 16. Judge Jones recommended that the court deny the motion. The defendant has objected to that recommendation.

### A. Factual Background

On April 2, 2013, the defendant's former girlfriend, T.T., petitioned for a restraining order against the defendant. Dkt. No. 16-1. The petition showed that T.T. and the defendant were in a dating relationship, had lived together, and were expecting a child together. Id. at 1. It also noted that the defendant had access to guns at "his mom's house," and that weapons had been involved in a past incident between T.T. and the defendant. Id. The Milwaukee County

8

Circuit Court commissioner granted the temporary restraining order on April 2, 2013, and scheduled an injunction hearing for April 16, 2013. Id. at 2.

By the April 16 hearing, the petitioner had not yet served the defendant, and the commissioner adjourned the hearing to April 30, 2013. Dkt. No. 18-1 at 5. The defendant admits that he received a copy of the temporary restraining order (which notified him of the April 16 hearing date) on April 22, 2013—six days after the April 16, 2013 initial hearing. Dkt. No. 16 at 2. Footnote 1 of the motion, however, states that "[i]t . . . appears that [the defendant] never received notice of the April 30, 2013 hearing." Id. at n.1.

The government attached to its response to the motion a copy of the circuit court docket. Dkt. No. 18-1 at 5-6. The docket indicates that on April 25, 2013, "Affidavit of service filed." Id. at 5. There is no indication of what was served, or who served it.

The defendant did not appear at the April 30, 2013 injunction hearing. Dkt. Nos. 15, 18-1 at 5. The commissioner issued a domestic abuse injunction. Id. She found that (1) the defendant and petitioner were in a dating relationship and either currently were living, or previously had lived, together; (2) T.T. filed her petition under Wis. Stat. §813.12; (3) the defendant had been properly served; (4) the defendant had an opportunity to be heard; and (5) there were reasonable grounds to believe that the defendant had engaged in, or may engage in, domestic abuse of T.T. Dkt. No. 18-1 at 3-4. The injunction required the defendant to refrain from committing acts or threats of domestic abuse against T.T. and prohibited him from possessing a firearm until after the

9

injunction had expired. Id. at 4. It also notified him that "[p]ossession of a firearm is a Class G Felony punishable by a fine not to exceed $25,000 or imprisonment not to exceed 10 years, or both." Id. It also stated, "[f]ederal law provides penalties for, and you may be prohibited from possessing, transporting, shipping, receiving or purchasing a firearm, including but not limited to, a rifle, shotgun, pistol, revolver, or ammunition pursuant to 18 U.S.C. 922(g)(8)." Id. at 3. The commissioner set the injunction's expiration date for April 30, 2017. Id.

Three and a half years later, a federal grand jury indicted the defendant under 18 U.S.C. §§922(g)(8) and 924(a)(2). Dkt. No. 1. The indictment alleged that on the day of the traffic stop described in the motion to suppress, the defendant had possessed a gun while under a domestic violence injunction. Id. Five months after it returned the original indictment—in February 2017—the grand jury returned a superseding indictment, which added a second count of possessing a firearm while under a domestic abuse injunction. Dkt. No. 10. The second count arose from a January 30, 2017 shooting incident in which officers responded to St. Joseph's hospital in Milwaukee and found the defendant suffering from gunshot wounds. Dkt. No. 18 at 3-4. While the defendant told the officers that he'd been shot by an unknown subject, forensic evidence later allowed them to determine that the gunshot wounds were self-inflicted. Id. at 4. The officers later conducted a consensual search of the defendant's mother's apartment, and recovered a pistol with blood on the "nozzle," and the defendant's fingerprint on the magazine. Id.

B. The Parties' Arguments

In his motion to dismiss the superseding indictment, the defendant argued that five aspects of 18 U.S.C. §922(g)(8) placed it at odds with the Supreme Court's interpretation of the Second Amendment in District of Columbia v. Heller, 554 U.S. 570 (2008). Dkt. No. 16 at 7. First, he argued that a court could issue a qualifying restraining order without a finding that the subject of the order had engaged in domestic violence, was imminently dangerous, or posed a threat with a gun. Second, he argued that the process under §922(g)(8) was "too minimal to safeguard the fundamental constitutional right of keeping arms against erroneous deprivations of the right." Id. Third, he argued that there was no historical precedent for extending the ban on felons possessing firearms to persons subject to restraining order. Id. Fourth, he asserted that the prohibition would not survive intermediate or strict scrutiny. Finally, he argued that the Seventh Circuit's justifications for upholding the constitutionality of §922(g)(9) (the prohibition against persons who have been convicted of misdemeanor domestic violence offenses possessing firearms) did not apply with equal force to §922(g)(8). Id.

The government responded that the defendant's Second Amendment arguments consistently had been rejected by the federal courts, citing United States v. Skoien, 614 F.3d 638 (7th Cir. 2010) (en banc) (upholding section §922(g)(9)); United States v. Reese, 627 F.3d 792 (10th Cir. 2010) (upholding §922(g)(8)); United States v. Chapman, 666 F.3d 220 (4th Cir. 2012) (§922(g)(8)); United States v. Luedtke, 589 F. Supp. 2d 1018 (E.D. Wis. 2008);

11

and United States v. Harris, Dkt. No. 15-CR-193-pp, 2016 WL 660888 (E.D. Wis. Feb. 18, 2016). The government asserted that §922(g)(8) survived any applicable standard of review because reducing domestic violence is a compelling government interest, and because the restraining order against the defendant was tailored to fit that interest.

With regard to the Fifth Amendment due process challenge, the government noted that "the federal courts have never found a due process requirement that the prohibitions of 922(g)(8) apply only where a state court has issued a restraining order or injunction under procedural protections afforded in a criminal trial." Dkt. No. 18 at 10. It analogized §922(g)(8)(C) to an injunction where a judicial officer has found that there exists a likelihood of irreparable harm, "a finding that is standard in civil injunction proceedings." Id. at 10 (citing United States v. Emerson, 270 F.3d 203, 261-62 (5th Cir. 2001)). Finally, the government reminded the court that "the federal courts are not in a position to adjudicate in hindsight a restraining order or injunction issued years ago by a state court judge." Id. at 11 (citing United States v. Wescott, 576 F.3d 347 (7th Cir. 2009)).

C.    Judge Jones' Decision

Judge Jones recommended that this court deny the motion to dismiss. He began his recommendation by quoting the statute, noting that §922(g)(8) makes unlawful the possession of a firearm by a person:

(8) who is subject to a court order that –

12

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

Dkt. No. 26 at 5. He then found that on its face, the restraining order at issue met each of the requirements of §922(g)(8)(A)-(C). Id. at 6.

Judge Jones reasoned that even though §922(g)(8) does not require proof beyond a reasonable doubt or the right to a jury trial, courts have held the procedural protections of §922(g)(8) to be constitutionally sufficient to impose a similar prohibition on firearm possession. Id. at 8 (citing United States v. Khatib, Dkt. No. 12-CR-190, 2012 WL 6086862, at *5 (E.D. Wis. Dec. 6, 2012); Luedtke, 589 F. Supp. 2d at 1024.). He concluded that, although §922(g)(8)(A) requires only notice and an to opportunity participate—less substantial procedures than those provided a criminal defendant, this comparative deficiency did not render the process constitutionally inadequate.

Finally, Judge Jones pointed out that this court recently had considered the arguments raised by the defendant in challenging §922(g)(8) in United

13

States v. Harris, Dkt. No. 15-CR-193-pp, 2016 WL 660888 (E.D. Wis. Feb. 2, 2016). He found that defendant Taylor had not made any new arguments that would cause this court to decide the issue differently here, and thus recommended that the court deny the portion of the motion to dismiss premised on the Second Amendment challenge. Dkt. No. 26 at 9. As for the defendant's Fifth Amendment challenge, Judge Jones found that Harris also foreclosed that argument, because such a decision would "run[] afoul of the Seventh Circuit's prohibition against using §922(g)(8) to collaterally attack state court procedure." Dkt. No. 26 at 9 (citing Wescott, 576 F.3d at 354-55). Finally, as to the defendant's argument that he did not receive notice of the April 30 hearing, Judge Jones found that "if the Court were to accept Mr. Taylor's allegation that he did not receive notice, this court would be effectively making a finding contrary to that of the state court. Such a finding would be contrary to the teaching of Harris." Dkt. No. 26 at 9.

> D.    The Defendant's Objection, and the Government's Response

The defendant again argues in his objection that he is the "law-abiding, responsible citizen" the Supreme Court described in Heller, who deserves the full protections of the Second Amendment. Dkt. No. 28 at 3 (citing Ezell v. City of Chicago, 651 F.3d 684, 706-07 (7th Cir. 2011) (statute at issue implicated Second Amendment right because "plaintiffs are the 'law abiding, responsible citizens' whose Second Amendment rights are entitled to full solicitude under Heller.")). He contends that because §922(g)(8) abridges a fundamental, constitutional right, it must pass some level of constitutional scrutiny. He

argues that §922(g)(8) does not pass constitutional scrutiny, because the government has not shown that the penalty promotes a valid government interest.

The defendant also revisits his argument that the procedures and findings necessary to enable the Wisconsin court to issue a domestic abuse injunction do not satisfy his Fifth Amendment right to due process. Dkt. No. 28 at 3-4. He states that he did not have the procedural safeguards normally afforded to criminal defendants—such as the right to counsel and the right to a trial—before the state court issued the injunction, and alleges that domestic abuse restraining orders have "no burden of proof associated with them." Id. at 4. In response to Judge Jones' conclusion that this argument constitutes a collateral attack on Wisconsin's domestic abuse injunction procedure, he claims that "[i]t is not the injunction that deprives [the defendant] of his fundamental right to bear arms, it is 922(g)(8) that subjects him to criminal penalties for doing so." Id. at 6.

The defendant attempts to distinguish this court's decision in Harris by attacking the decisions upon which Harris relied: Judge Adleman's decision in Luedtke and the Fifth Circuit's 2001 opinion in Emerson, 270 F.3d 203. Id. at 6-7. He argues that Emerson no longer carries persuasive weight because it applied rational basis review to §922(g)(8)—a standard Heller expressly disavowed seven years later. Id. at 7. He asserts that both Emerson and Luedtke "placed undue weight on the 'assumption' of Congress that only those that 'reflected a real threat or danger of injury to the protected party' would be

15

enjoined under a restraining order meeting the requirements of 922(g)(8)." Dkt. No. 28 at 7 (quoting Emerson, 270 F.3d at 262). The defendant claims that the court that issued his domestic abuse injunction did not make the finding contemplated by Emerson and Luedtke, and that the issuing court in his case needed only "reasonable grounds" to believe that he "may" engage in domestic violence. Id. He points to the fact that in Wisconsin, the definition of "domestic violence" includes damage to property, which means that a defendant in Wisconsin may be stripped of his or her Second Amendment rights solely upon a finding of "reasonable grounds" to believe that he "may" engage in damage to property. Id. In his reply, the defendant added that the government had not shown why depriving people who are subject to domestic abuse injunctions of firearms serves a government interest. Dkt. No. 30 at 3.

Finally, the defendant recounted that in Luedtke, Judge Adelman found that the fact that a domestic abuse injunction was temporary meant that the prohibition in §922(g)(8) was more narrowly tailored than §922(g)(9)'s prohibition against individuals convicted of domestic violence offenses possessing firearms, and thus that if the Seventh Circuit had upheld the broader §922(g)(9) ban, the more narrow §922(g)(8) ban also passed constitutional muster. Dkt. No. 28 at 8. The defendant argues that the temporary nature of the restraining order (and thus, the §922(g)(8) prohibition) might be relevant to the level of scrutiny the court should apply, but that it does not show that the prohibition is substantially related to an important government interest (which would require intermediate scrutiny) or is narrowly

tailored to further a compelling government interest (which would require strict scrutiny). <u>Id.</u>

The government responds with similar arguments to the ones it made in its response brief before Judge Jones. It reiterates that the defendant's claims are "nearly identical" to those this court rejected in <u>Harris</u>, pointing out that the defendant in <u>Harris</u> also argued that §922(g)(8) failed constitutional scrutiny and that he did not receive due process in the issuance of the underlying injunction that triggered the federal ban. Dkt. No. 29 at 2.

The government examined the <u>Heller</u> decision and emphasized its language that "'nothing in [this] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . .'" Dkt. No. 29 at 2 (quoting <u>Heller</u>, 554 U.S. at 626). The government argues that §922(g)(8) is an example of an appropriate restriction on an individual's right to possess firearms, of the kind that <u>Heller</u> never intended to upset. <u>Id.</u> at 3.

Further, the government contends that the defendant's Second Amendment right is protected by the Wisconsin domestic violence injunction process, because that process requires a judicial officer to make a determination that the respondent constituted a credible threat to the physical safety of the intimate partner or child. <u>Id.</u> And, the government states, §922(g)(8) applies only after a hearing of which the respondent receives actual notice, and in which the respondent had an opportunity to participate. <u>Id.</u> The

Case 2:16-cr-00143-PP    Filed 07/19/17    Page 17 of 21    Document 31

government concludes with further authority upholding §922(g)(8) as constitutional. Id. The government lists a number of cases decided since Heller, in which courts have found §922(g)(8) constitutional. Id. at 4 (citing United States v. Bena, No. 10-CR-07-LRR, 2010 WL 1418389, (N.D. Iowa, Apr. 6, 2010); United States v. Grote, No. CR-08-6057-LRS, 2009 WL 853974 (E.D. Wash. Mar. 26, 2009); United States v. Montalvo, No 08-CR-004S, 2009 WL 667229 (W.D.N.Y. Mar. 12, 2009); United States v. Knight, 754 F. Supp. 2d 224 (D. Me. 2008); and United States v. Erwin, No. 1:07-CR-556(LEK), 2008 WL 4534058 (N.D.N.Y. Oct. 6, 2008)).

  E.  <u>Analysis</u>

  Courts in this district—including this one—have decided the issues the defendant raises, and the defendant has not distinguished those decisions. In Luedtke, Judge Adelman undertook a thorough analysis of §922(g)(8)'s interplay with the Second Amendment, post-Heller. Luedtke, 589 F. Supp. 2d at 1020-1025. And in United States v. Harris, this court rejected several re-crafted Second and Fifth Amendment challenges to §922(g)(8). Harris, 2016 WL 660888, at *2-3.

  The defendant does not convincingly distinguish his arguments from those rejected in Harris and Luedtke. The defendant in Harris, like the defendant here, argued that the government had not demonstrated a valid government interest to survive any level of constitutional scrutiny. Harris, 2016 WL 660888 at *1. This court rejected that argument. Id. at *2. The defendant in Harris, like the defendant here, argued that Wisconsin law defined "domestic

abuse" without requiring any physical contact with the subject of the domestic abuse injunction and that the burden of proof associated with issuing a domestic injunction was too minimal. Id. at *1. This court rejected that argument. Id. at *2.

The defendant in Harris raised a Fifth Amendment due process argument. Id. at *2 ("The defendant also argued that §922(g)(8) violated the Due Process Clause of the Fifth Amendment, because he did not receive due process in the domestic violence injunction hearing . . . ."). This court rejected that argument, holding that "a §922(g)(8) challenge is not the proper vehicle for the defendant's attempt to challenge the level of process he received in the state court injunction hearing." Id. at *3.

The defendant asserts that the government has not shown that §922(g)(8) serves a government interest. That argument ignores the authority that upholds the statute even under strict scrutiny for the "compelling government interest" of "reducing domestic violence." Luedtke, 589 F. Supp. 2d at 1025 (quoting Erwin, 2008 WL 4534059, at *2); see also United States v. Lippman, 369 F.3d 1039, 1043 (8th Cir. 2004), cert. denied, 543 U.S. 1080 (2005)).

The court agrees with Judge Jones' determination that the injunction, on its face, meets the requirement for an injunction under §922(g)(8)(A)-(C). The court also agrees with Judge Adelman's determination in Luedtke that the Wisconsin law meets the procedural minimums necessary to comport with due process. See Luedtke, 589 F. Supp. 2d at 1024. Contrary to the defendant's position, the injunction under §922(g)(8)(C)(ii) does not have "no burden of

19

proof associated with [it].” The statute “sets forth clear procedures for injunction matters, including the burden of proof.” Id. at 1024 (quoting Wis. Stat. §813.12(4)(a)3 (“reasonable grounds to believe that the respondent has engaged in, or based upon prior conduct of the petitioner and the respondent may engage in, domestic abuse of the petitioner.”) While the defendant may disagree with the stringency of that burden of proof, he cannot plausibly deny its existence. And the defendant’s arguments that he did not receive a jury trial, and that the state did not prove the elements for a domestic violence injunction beyond a reasonable doubt, suffer from the same flaw as the argument Judge Adelman rejected in Luedtke: neither defendant “provide[d] . . . authority for the proposition that counsel, a jury trial and/or proof beyond a reasonable doubt are always required before a person may be stripped of a constitutional right.” Luedtke, 589 F. Supp. 2d at 1023.

The court agrees with Judge Jones’ analysis of the defendant’s Second Fifth Amendment challenges. The court will adopt Judge Jones’ report and recommendation, and incorporates the reasoning supporting those conclusions into this order. The court will deny the motion to dismiss.

## III. Conclusion

The court **ADOPTS** the magistrate judge’s report and recommendation, recommending that this court deny the defendant’s motion to suppress. Dkt. No. 25. The court **DENIES** the motion to suppress. Dkt. No. 15.

The court **ADOPTS** the magistrate judge's report and recommendation that this court deny the defendant's to dismiss superseding indictment. Dkt. No. 26. The court **DENIES** the motion to suppress. Dkt. No. 16.

The court will schedule a hearing to discuss final pretrial conference and trial dates with the parties.

Dated in Milwaukee, Wisconsin this 19th day of July, 2017.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**