UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERCA,

        Plaintiff,

v.                                                 Case No. 16-cr-143-pp

BRAXTON TAYLOR,

        Defendant.

---

**ORDER OVERRULING DEFENDANT'S OBJECTION (DKT. NO. 60), ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (DKT. NO. 58), AND DENYING DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT (DKT. NO. 49)**

---

On November 14, 2017, the defendant filed a motion to dismiss the superseding indictment, dkt. no. 49, and a motion for severance of counts, dkt. no. 50. A month later, on December 18, 2017, Magistrate Judge David E. Jones issued an order denying the motion to sever, and a report and recommendation that this court deny the motion to dismiss. Dkt. No. 58. On January 2, 2018, the defendant objected to Judge Jones's decision, arguing that: (1) Judge Jones did not address how the defendant's domestic violence injunction could qualify as an "order" under 18 U.S.C. §922(g)(8)(C)(ii), when it did not include the exact language of that statute; and (2) the judge's decision not to sever counts was contrary to law and clearly erroneous. Id. at 9. The court overrules the objections, adopts Judge Jones's report and recommendation and denies the defendant's motions.

**I.  Background**

    A.    <u>Factual Background</u>

On April 2, 2013, the defendant's former girlfriend, T.T., petitioned for a restraining order against the defendant. Dkt. No. 16-1. The petition showed that T.T. and the defendant were in a dating relationship, had lived together and were expecting a child together. Id. at 1. It also noted that the defendant had access to guns at "his mom's house," and that weapons had been involved in a past incident between T.T. and the defendant. Id. The Milwaukee County Circuit Court commissioner granted the temporary restraining order on April 2, 2013, and scheduled an injunction hearing for April 16, 2013. Id. at 2.

By the April 16 hearing, the petitioner had not yet served the defendant, and the commissioner adjourned the hearing to April 30, 2013. Dkt. No. 18-1 at 5. After the April 30 hearing, the commissioner issued a domestic abuse injunction against the petitioner that read, in relevant part:

    THE COURT FINDS:

    1.    The petitioner/protected person has filed a petition alleging domestic abuse under §813.12, Wisconsin Statutes.

    2.    This court has personal and subject matter jurisdiction. The respondent has been properly served and had an opportunity to be heard.

    3.    There are reasonable grounds to believe that the respondent engaged in, or based upon prior conduct of the petitioner/protected person and the respondent may engage in, domestic abuse of the petitioner/protected person as defined in §813.12, Wisconsin Statutes.

THE COURT ORDERS:

1. The respondent to refrain from committing acts or threats of domestic abuse against the petitioner/protected person.

2. The respondent to avoid the petitioner/protected person's residence and/or any location temporarily occupied by the petitioner/protected person.

3. The respondent to avoid contacting or causing any person other than a party's attorney or law enforcement officer to contact the petitioner/protected person unless the petitioner/protected person consents in writing. Contact includes: contact at petitioner/protected person's home, work, school, public places, in person, by phone, in writing, by electronic communication or device, or in any other manner.

4. The sheriff to assist in executing this injunction, if requested.

Dkt. No. 49-1. The injunction prohibited the defendant from possessing a firearm until the injunction expired—on April 30, 2017—and stated that, "[f]ederal law provides penalties for, and you may be prohibited from possessing, transporting, shipping, receiving or purchasing a firearm . . . pursuant to 18 U.S.C. 922(g)(8)." Id. at 1-2.

Three years later, on June 24, 2016, Milwaukee police officers Erin Tischer and Michael Miller stopped an SUV for a cracked windshield. Dkt. No. 15 at 1. The officers discovered that both the driver, Austin Sanders, and the passenger (the defendant) had active arrest warrants. Id. While officers took the subjects into custody, another officer obtained consent to get into the SUV to move it onto a side street. Dkt. No. 17 at 2. When the officer got into the car, she saw a handgun in the SUV's driver door pocket. Dkt. No. 15 at 1. Officers

3

then searched the SUV, and found another firearm under the passenger seat. Id.

On the basis of this encounter, a grand jury returned an indictment on September 7, 2016, charging the defendant with a single count of possessing a firearm while subject to a valid domestic violence injunction in violation of 18 U.S.C. §§922(g)(8) and 924(a)(2). Dkt. No. 1.

On February 22, 2017—five months after returning the first indictment— the grand jury returned a superseding indictment, which added a second count of possessing a firearm while under a domestic abuse injunction. Dkt. No. 10. The second count arose from a January 30, 2017 shooting incident in which officers responded to St. Joseph's hospital in Milwaukee and found the defendant suffering from gunshot wounds that they later determined were self-inflicted. Dkt. No. 18 at 3-4.[1]

B. <u>Procedural Background</u>

On February 27, 2017, Magistrate Judge William Duffin arraigned the defendant on the superseding indictment. Dkt. No. 13. Two weeks later, the defendant filed two pretrial motions: (1) a motion to suppress, dkt. no. 15; and (2) a motion to dismiss the superseding indictment, dkt. no. 16. The motion to dismiss the superseding indictment argued that 18 U.S.C. §922(g)(8) violated the defendant's Second Amendment right to keep and bear arms, as well as his Fifth Amendment right to due process. Dkt. No. 16.

---

[1] For further details, see the court's July 19, 2017 order, at dkt. no. 31.

On April 20, 2017, Judge Jones issued a report, recommending that this court deny the motion to suppress. Dkt. No. 25. Eight days later, he issued a second report, recommending that the court deny the motion to dismiss the superseding indictment. Dkt. No. 26. The defendant objected to the second report and recommendation—the one asking the court to dismiss the superseding indictment—but did not object to the recommendation regarding the motion to suppress. Dkt. No. 28.

In a July 19, 2017 order, this court adopted both of Judge Jones's recommendations and denied both motions. Dkt. No. 31.

The court set a final pretrial conference for September 28, 2017 and a jury trial for October 10, 2017. Dkt. No. 36. On the day before the final pretrial conference, the government filed a motion to compel the defendant to produce a set of fingerprints, dkt. no. 39, and the defendant filed a motion to adjourn the jury trial, dkt. no. 40. The court granted the motion to adjourn and converted the final pretrial conference into a status conference. At that conference, defense counsel indicated that he had had trouble communicating with the defendant, and could not tell the court whether the defendant was in a trial posture or was planning to plead. More to the point, counsel indicated that if the case were to go to trial, he believed that he would have to withdraw due to a conflict of interest. This conflict would be present only if the defendant were to elect to go to trial. Dkt. No. 44.

The court held another status conference on October 10, 2017, with the defendant present. Dkt. No. 46. At that conference, the defendant told the

5

court that he wished to go to trial. Given that, defense counsel moved to withdraw, and the court granted that motion. Defense counsel already had taken steps to line up successor counsel. Id.

The defendant's new attorney appeared for a status conference on October 31, 2017. Dkt. No. 47. Two weeks later, the defendant filed a motion for leave to file out-of-time motions, dkt. no. 48, together with motions to dismiss the superseding indictment, dkt. no. 49, and to sever counts, dkt. no. 50. The court granted the defendant's request for leave to file out-of-time motions, dkt. no. 54, and referred the pending motions to Judge Jones for decision or the issuance of a report and recommendation, dkt. no. 55.

C.     Parties' Arguments to Judge Jones

Before Judge Jones, the defendant conceded that at all relevant times, he was subject to a domestic violence injunction. Dkt. No. 49 at 1. He argued, however, that the injunction did not qualify as a "court order" under 18 U.S.C. §922(g)(8), because the injunction did not use language identical to that used in 18 U.S.C. §922(g)(8)(C)(ii). Id. at 3-4. The defendant argued that because Congress used the term "explicitly" in §922(g)(8)(C)(ii), any domestic abuse injunction giving rise to a §922(g)(8) charge had to contain the identical language used in §922(g)(8)(C)(ii). Id. at 3-4. The defendant further maintained that in construing the injunction, the court should not look to Wisconsin's definition of "domestic abuse," because that would be an implicit reference, in violation of §922(g)(8)(C)(ii)'s mandate that an injunctive order must "explicitly" prohibit certain acts/ threats. Dkt. No. 56 at 4-5.

6

As for the motion for severance, the defendant argued that in the superseding indictment, the government improperly had joined two gun counts under Fed. R. Crim. P. 8(a). He asserted that the events that gave rise to the second count of the indictment (the shooting which had resulted in the defendant's going to the hospital with self-inflicted wounds) had occurred nearly a year after the events underlying the first count of the indictment (the search of the SUV after the traffic stop). Dkt. No. 50. The defendant claimed that "the only connection between the two counts is that each charges a violation of a single statute." Id. at 6.

The defendant also argued that even if the court found that joinder of the two counts was proper under Rule 8(a), the court should exercise its discretion to sever under Fed. R. Crim. P. 14(a), because joining the counts resulted in an unacceptable level of prejudice to the defendant. Id. at 7. The defendant pointed the court to Fed. R. Evid. 404(b) as proof of this unfair prejudice. He argued that if the two counts were not joined in the same indictment, the government would not be able to admit evidence that the defendant was found in an SUV with a pistol in 2016 to show that he likely possessed a different gun in a house in 2017, and vice versa. The defendant argued that allowing the two counts to remain in the same indictment would expose the defendant to the risk that the jury could find that he possessed one gun, and then use that finding to convict him for the other gun based on propensity alone. Id. at 7-8.

D. Judge Jones's Order and Report & Recommendation, dkt. no. 58.

On December 18, 2017, Judge Jones denied the motion to sever, and recommended that this court deny the motion to dismiss. Dkt. No. 58.[2]

Judge Jones began by analyzing the defendant's motion to dismiss. Id. at 6. After discussing the language of 18 U.S.C. §922(g)(8), Judge Jones looked to Judge Adelman's decision in United States v. Luedtke, No. 08-CR-189, 2008 WL 4951140 (E.D. Wis. Nov. 18, 2008). Id. at 8. Judge Jones noted that Judge Adelman found Wisconsin's definition of domestic abuse to be included in the conduct described by §922(g)(8)(C)(ii). Id. at 9 (citing Luedtke, 2008 WL 4951140, at *5). Judge Jones observed that Judge Adelman had rejected the notion that an injunction must precisely, or exclusively, track the language in §922(g)(8)(C) in order for the injunction to trigger §922(g)(8)(C)'s firearms prohibition. Id. (quoting Luedtke, 2008 WL 4951140, at *5).

Judge Jones concluded that the defendant had not cited "any authority for his proposition that the injunction does not satisfy §922(g)(8)(C) requirements because it is not an 'explicit' prohibition[,]" recounting that "all courts to address the question have adopted a conclusion opposite from that which [the defendant] asks this Court to hold." Id. (citing United States v. Dubose, 598 F.3d 726 (11th Cir. 2010); United States v. Coccia, 446 F.3d 233, 242 (1st Cir. 2006); United States v. Olvey, 437 F.3d 804, 807 (8th Cir. 2006);

---

[2] First, Judge Jones granted the government's unopposed motion for the defendant to produce his fingerprints and ordered the defendant to submit a full set of fingerprints on the date of the final pretrial conference. Dkt. No. 58 at 6.

8

United States v. Bostic, 163 F.3d 718, 722 (4th Cir. 1999); and Luedtke, 2008 WL 4951140). Judge Jones recommended that this court deny the motion to dismiss the superseding indictment. Id.

In denying the defendant's motion to sever, Judge Jones concluded that the government properly had joined the counts under Fed. R. Crim. P. 8(a). Id. at 12. After looking to the Seventh Circuit's decisions in United States v. Coleman, 22 F.3d 126, 134-35 (7th Cir. 1994) and United States v. Rice, 520 F.3d 811, 818 (7th Cir. 2008), Judge Jones found that the two counts were similar in nature, that the jury instructions for each would be identical, and that the question of whether the defendant was a "prohibited person" was an element of both counts, which the government would have to prove as to each. Id. As to the question of whether the joinder was prejudicial under Rule 14(a), Judge Jones found that that the risk of jury confusion was minimal because of the relatively straightforward evidence in the case. Id. He was not convinced that a jury would be unable to consider separately the evidence relating to each count, and noted that courts presume juries will follow the trial judge's instructions, including the instruction that the jury must consider each count separately. Id. at 14.

**II.     Analysis**

    A.     Motion to Dismiss Superseding Indictment, dkt. no. 49.

The court reviews *de novo* those portions of a magistrate judge's recommendation to which a party objects, and "may accept, reject, or modify

9

the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

The relevant provision of the injunction against the defendant mandates that the defendant "refrain from committing acts or threats of domestic abuse against the petitioner/protected person." Section 922(g)(8) applies to a court order—an injunction—that "by its terms explicitly prohibits the use, attempted use, or threatened use of physical force." In his objection to Judge Jones's report and recommendation, the defendant emphasized the phrase "by its terms explicitly prohibits." He repeated the words "explicit" or "explicitly" multiple times. And he argued that when it enacted §922(g)(8)(C)(ii), "Congress opted to make the relevant prohibition against gun possession dependent on the existence of a restraining order containing specified 'explicit' terms." Dkt. No. 60 at 3. He articulated this argument another way, referring to the "by its terms explicitly prohibits" clause as a clause "requiring an order's explicit inclusion of particular terms." Id. This argument assumes that the word "explicit" means "identical," or "exactly like." It does not.

Merriam-Webster defines "explicit" as "fully revealed or expressed without vagueness, implication, or ambiguity: leaving no question as to meaning or intent." Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/explicitly (last visited Jan. 22, 2018). Oxford defines the word to mean "[i]n a clear and detailed manner, leaving no room for confusion or doubt." Oxford English Dictionary, available at: https://en.oxforddictionaries.com/definition/explicitly (last visited Jan. 22,

10

2018). Cambridge says that "explicit" means "communicated directly in a clear and exact way." Cambridge Dictionary, available at: https://dictionary.cambridge.org/dictionary/english/explicit (last visited Jan. 22, 2018).

Each of these definitions boils down to the concept of clarity. In directing that the injunction must, by its terms, "explicitly prohibit" certain kinds of behavior, §922(g)(8)(C)(ii) requires clarity. It does not require that the injunction contain the same language as the statute, or that it contain particular words. As Judge Adelman held in Luedtke, nothing in the phrase "by its terms explicitly prohibits" dictates that "the injunction must precisely and/or exclusively track the language in §922(g)(8)(C) . . . ." Luedtke, 2008 WL 4951140 at *5.

The defendant argued that in looking to the Wisconsin definition of domestic abuse to determine whether the injunction in question "explicitly prohibited" the conduct listed in §922(g)(8)(C)(ii), Judge Jones, Judge Adelman and other judges rewrote the statute by disposing of its first clause—the "by its terms explicitly prohibits . . ." clause. Dkt. No. 60 at 3. This would be true only if Wisconsin's definition of "domestic abuse" did not explicitly—clearly and directly—prohibit the conduct listed in §922(g)(8)(C)(ii). Any court looking at an injunction in the context of a §922(g)(8)(C)(ii) must determine whether the terms of the injunction clearly and directly prohibit the conduct described in the federal statute—not whether the injunction contains specific words, or whether it uses the exact language of the federal statute.

11

The injunction against the defendant, by its terms, explicitly—clearly and directly—prohibited the kind of conduct described in the federal statute. The relevant provision in the injunction begins by saying, "THE COURT ORDERS . . . ." Section 922(g)(8) prohibits a person "who is subject to a court order" of a certain type from possessing firearms. The first three words of the relevant provision of the defendant's injunction make it clear that the injunction was a "court order." The front page of the injunction lists "Braxton D. Taylor"—the defendant—as the "respondent/defendant," so the defendant was "subject to" that "court order." See Dkt. No. 49-1.

The injunction ordered the "respondent"—again, the defendant— "to refrain from committing" certain acts. Id. at 2. Merriam-Webster defines "refrain" as "to keep oneself from doing . . . something . . . ." Meriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/refrain (last visited Jan. 22, 2018). Oxford says it means to "stop oneself from doing something." Oxford English Dictionary, available at: https://en.oxforddictionaries.com/definition/refrain (last visited Jan. 22, 2018). Section 922(g)(8)(C)(ii) mandates that the court order must "prohibit" certain acts. To "prohibit" someone from doing something means formally to forbid him from doing it, according to Oxford. Oxford English Dictionary, available at: https://en.oxforddictionaries.com/definition/prohibit (last visited Jan. 22, 2018). The defendant's injunction ordered the defendant to stop

himself from committing certain acts—in other words, it forbade him, or prohibited him, from committing those acts.

What type of acts did the defendant's injunction prohibit? It prohibited "acts or threats of domestic abuse." Both Judge Adelman in <u>Luedtke</u> and Judge Jones in this case looked to Wisconsin's definition of "domestic abuse"—the logical place to find out what activity that phrase includes. They looked to Wis. Stat. §813.12. That statute defines "domestic abuse" as:

> [A]ny of the following engaged in by an adult family member or adult household member against another adult family member or adult household member, by an adult caregiver against an adult who is under the caregiver's care, by an adult against his or her adult former spouse, by an adult against an adult with whom the individual has or had a dating relationship, or by an adult against an adult with whom the person has a child in common:
>
> 1. Intentional infliction of physical pain, physical injury or illness.
> 2. Intentional impairment of physical condition.
> 3. A violation of s. 940.225(1) [first-degree sexual assault], (2) [second-degree sexual assault] or (3) [third-degree sexual assault].
> 4. A violation of s. 940.32 [stalking]
> 5. A violation of s. 940.01 [damage to property], involving property that belongs to the individual.
> 6. A threat to engage in the conduct under subd. 1., 2., 3., 4., or 5.

Wis. Stat. §813.12(1)(am). Those are the actions that the injunction prohibited the defendant from committing.

Section 922(g)(8)(C)(ii) states that the order must prohibit the "use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury." The question is whether, in ordering the defendant to refrain from committing acts

13

or threats of domestic abuse, the injunction clearly and directly informed the defendant that he could not use, attempt to use, or threaten the use of physical force that would reasonably be expected to cause bodily injury against an intimate partner or child. The court concludes, like Judge Jones and Judge Adelman, that it does.

Intentionally inflicting physical pain or physical injury on someone constitutes the use of physical force that one reasonably would expect to cause injury. The Wisconsin language arguably is clearer—more explicit—than the federal language. Prohibiting a person from intentionally inflicting physical pain or injury on another is less vague and more precise than prohibiting him from using "physical force that would reasonably be expected to cause bodily injury." The same is true of prohibiting someone from intentionally impairing another person's physical condition; the prohibited person does not have to guess what kinds of physical force "would reasonably be expected to cause injury." Prohibiting a person from committing sexual assault is a prohibition against using physical force that would reasonably be expected to cause physical injury. And prohibiting someone from threatening any of these actions prohibits a person from threatening the use of physical force that would reasonably be expected to cause physical injury. The Wisconsin statute also goes further, prohibiting stalking and damage to property.

Section 922(g)(8)(C)(ii) requires the injunction to forbid the person under the order from committing these acts against "an intimate partner

14

or child." Section 921(a)(32) of Title 18 defines an "intimate partner" as a spouse, a former spouse, an individual who is a parent of a child of the person, or an individual who cohabitates with or has cohabited with the person. This definition is almost identical to the definition in Wis. Stat. §813.12; the definition in the Wisconsin statute is as explicit—as clear—as the definition in the federal statute, but adds caregivers and does not include abuse against a child.

Judge Adelman found that the Wisconsin domestic abuse statute included the conduct listed in §922(g)(8)(C)(ii), and was persuaded by that conclusion. Luedtke, 2008 WL 4951140 at *5. To this court, the relevant question is not whether the injunction against the defendant prohibited actions that were a subset of the actions prohibited by §922(g)(8)(C)(ii). The relevant question is whether the injunction against the defendant *clearly and directly* prohibited the kinds of actions listed in §922(g)(8)(C)(ii). It did. The injunction against the defendant, by its terms, "explicitly prohibit[ed]" the conduct described in §922(g)(8)(C)(ii) (as well as some additional conduct, such as intentionally inflicting illness on an intimate partner). The order against the defendant did not dispose of the "by its terms explicitly prohibits" clause. It embodied it.

In his objection, the defendant spent some time arguing that the other courts that have reached the conclusion that Judge Jones did (and that this court does) were misguided. He contended that in United States v. Bostic, 168 F.3d 718, 722 (4th Cir. 1999), the Fourth Circuit "silently avoided" the

15

question of why it could substitute its definition of "abuse" for the explicit terms required by the statute. The defendant argued that in United States v. Coccia, 446 F.3d 233, 242 (1st Cir. 2006), the First Circuit "didn't attempt to explain its perceived license for expanding the inquiry beyond the restraining order's *explicit* language." Dkt. No. 60 at 7. The defendant claimed that in United States v. DuBose, 598 F.3d 726, 730-31 (11th Cir. 2010), the Eleventh Circuit erred by using its conception of the statute's purpose as grounds for giving the statute different meaning than its plain language. Id. at 8.

This court acknowledges that courts in three circuits have decided the issue the way Judge Jones did. This court, however, does not rely on the reasoning from any of those cases to make its determination that the injunction against the defendant explicitly prohibited the kinds of conduct listed in §922(g)(8)(C)(ii). This court bases its decision on what it understands the word "explicit" to mean, and its rejection of the defendant's insistence that to be "explicit," the injunction must contain certain words, or must repeat verbatim the words the U.S. Congress used in §922(g)(8)(C)(ii). Nothing in the statute or case law supports the defendant's conclusion.

The court will adopt Judge Jones's recommendation, and will deny the motion to dismiss the superseding indictment.

    B.    <u>Motion to Sever Counts, dkt. no. 50.</u>

The defendant's motion to sever was non-dispositive; its resolution did not dispose of a charge or a defense. Under Fed. R. Crim. P. 59(a) and this court's local rules, Judge Jones had the authority to decide the motion. Given

16

that, this court's review of the defendant's objection to Judge Jones's ruling is limited. This court may set aside Judge Jones's decision only if it was "contrary to law or clearly erroneous." Rule 59(a). The defendant concedes that he must meet this higher standard to prevail on his objection.

Despite the higher standard of review, the defendant summed up his objections to Judge Jones's denial of the motion to sever in a single paragraph. He stated that joining the two gun counts in one indictment did "nothing" to promote judicial economy or efficiency, because there was no "factual overlap" between to two incidents that gave rise to the two counts. And he stated that putting both counts in the same indictment "prejudice[d] him," by creating a possibility that a jury could conclude that the defendant had possessed a gun on one of the two occasions, then use that conclusion as a basis for assuming that he must be guilty of possessing the other gun on the other occasion. These two conclusory statements do not come close to demonstrating that Judge Jones's decision was "contrary to law" or "clearly erroneous."

Under Fed. R. Crim. P. 8(a), an indictment properly joins offenses where "the offenses charged are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." The two offenses here are of the same or similar character, as Judge Jones concluded—both offenses allege that the defendant possessed a gun despite being a prohibited person. That conclusion meets the first criteria for proper joinder under Rule 8(a). Judge Jones went further, and found that joining the two similar charges in one indictment promoted judicial economy

17

and efficiency. He pointed out that at trial, the government would have to prove, for each charge, the element that the defendant was a "prohibited person." He explained that the evidence that the defendant was a "prohibited person" would be the same for both counts. He noted that the jury instructions would be the same for both counts. The defendant's assertion that there is no "factual overlap" between the two counts (when both counts require the government to submit proof that a single defendant met the definition of "prohibited person"), and that joining them would do "nothing" to promote efficiency (when doing so would avoid the time and expense of two trials that, in part, would involve the same evidence), is a head-scratcher.

Because Judge Jones found that joinder was proper under Rule 8(a), he turned to whether that joinder was prejudicial under Fed. R. Crim. P. 14(a). The rule provides that the court may order severance of counts if the joinder of offenses "appears to prejudice a defendant." Fed. R. Crim. P. 14. The word "may" in Rule 14(a) leaves to the trial court's discretion whether to sever based on prejudice. Years ago, the Seventh Circuit explained that "[i]n practice, severe prejudice is required for an order of severance and the trial judge's refusal to sever is rarely reversed." U.S. v. Velasquez, 772 F.2d 1348, 1352 (7th Cir. 1985) (citations omitted) (discussing severance in the context of multi-defendant cases which might involve multiple conspiracies).

The defendant argued before Judge Jones, and in his objection to this court, that joining the two counts was prejudicial to him. He asserted that a jury could find that on one occasion, the defendant knowingly possessed a gun

18

despite being a prohibited person, and then could use that finding as a basis to assume that on the other occasion, the defendant must have knowingly possessed a gun despite being a prohibited person. The defendant argued that allowing this risk was tantamount to the court allowing the government to violate Fed. R. Evid. 404(b), which mandates that evidence of a person's character or character trait is inadmissible to prove that on a particular occasion, the person acted in accordance with that character or trait.

Judge Jones rejected the suggestion that a jury would not be able to separate the facts of what happened in one count from the facts of what happened in the other. He also presumed that any jury would follow the trial court judge's instruction that the jury must give each count separate consideration. The court agrees, and concludes that the defendant's one-sentence reiteration of an argument Judge Jones rejected does not demonstrate that Judge Jones's decision was "contrary to law" or "clearly erroneous."

This court goes further—the defendant's argument amounts to an assertion that courts must grant severance in any case involving more than one count alleging the same offense against the same defendant. Many, if not most, of the indictments the court sees involve multiple charges against one defendant—a defendant charged with four armed robberies in a single indictment; a defendant facing ten drug counts in a single indictment; a defendant accused of committing thirty-two counts of fraud against the same government agency in a single indictment. Under the defendant's theory, every

19

such indictment is impermissibly fraught with the danger that, once a jury concludes the defendant committed one of the charged offenses, it will dispose of the remaining counts without analysis, by relying on its conclusion as to the first one. This court has seen jury verdicts—just in the last year, let alone over its career—disproving that theory.

The court will overrule the defendant's objection to Judge Jones's order denying the motion to sever.

### III. Conclusion

The court **OVERRULES** the defendant's objection to the report and recommendation, dkt. no. 60, and **ADOPTS** the report and recommendation, dkt. no. 58.

The court **ORDERS** that the defendant's motion to dismiss the superseding indictment is **DENIED**. Dkt. No. 49.

The court **OVERRULES** the defendant's objection to Judge Jones's order denying the motion to sever, dkt. no. 60; Judge Jones's order denying the motion to sever (dkt. no. 58 at 14) stands.

Dated in Milwaukee, Wisconsin this 21st day of February, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**